**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 3, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

FRONT RANGE EQUINE RESCUE;
THE HUMANE SOCIETY OF THE
UNITED STATES; MARIN HUMANE
SOCIETY; HORSES FOR LIFE
FOUNDATION; RETURN TO
FREEDOM; RAMONA CORDOVA;
KRYSTLE SMITH; CASSIE GROSS;
DEBORAH TRAHAN; BARBARA
SINK; CHIEF DAVID BALD EAGLE;
CHIEF ARVOL LOOKING HORSE;
TANYA LITTLEWOLF; ROXANNE
TALLTREE-DOUGLAS;
FOUNDATION TO PROTECT NEW
MEXICO WILDLIFE; SANDY
SCHAEFER,

        Plaintiffs - Appellants,

  and

STATE OF NEW MEXICO,

        Plaintiff Intervenor -
        Appellant,

    v.

TOM VILSACK, Secretary, U.S.
Department of Agriculture; ELISABETH
A. HAGEN, Under Secretary for Food
Safety, U.S. Department of Agriculture;
ALFRED A. ALMANZA, Administrator,
Food Safety and Inspection Service, U.S.
Department of Agriculture,

        Defendants - Appellees,

  and

No. 13-2187

RESPONSIBLE TRANSPORTATION, LLC; CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION; RAINS NATURAL MEATS; VALLEY MEAT COMPANY, LLC; CHEVALINE, LLC; INTERNATIONAL EQUINE BUSINESS ASSOCIATION; NEW MEXICO CATTLE GROWERS' ASSOCIATION; SOUTH DAKOTA STOCKGROWERS ASSOCIATION; RANCHERS–CATTLEMEN ACTION LEGAL FUND UNITED STOCKGROWERS OF AMERICA; MARCY BRITTON; BILL AND JAN WOOD; LEROY WETZ; SHIRLEY WETZ; DOUG JOHNSON; JUDY JOHNSON; KUJYUKURI, LTD; UNITED HORSEMEN; SCENIC VIEW RANCH,

        Defendants Intervenors - Appellees.


AMERICAN FARM BUREAU FEDERATION; NATIONAL CATTLEMEN'S BEEF ASSOCIATION; NEW MEXICO FARM AND LIVESTOCK BUREAU,

        Amici Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:13–CV–00639–MCA–RHS)**

---

Bruce A. Wagman of Schiff Hardin LLP, San Francisco, California (Rocky N. Unruh, Schiff Hardin LLP, San Francisco, California, Ari Biernoff, Office of the Attorney

General for the State of New Mexico, and Brian Egolf of Egolf+Ferlic+Day, LLC, Santa Fe, New Mexico, with him on the briefs) for Plaintiffs–Appellants.

Mark R. Haag, Attorney, Environmental and Natural Resources Division, U.S. Department of Justice (Thomas N. Bolick, Attorney–Advisor, Office of the General Counsel, U.S. Department of Agriculture, of counsel; Robert G. Dreher, Acting Assistant Attorney General, and Andrew A. Smith and Alison D. Garner, Attorneys, Environmental and Natural Resources Division, U.S. Department of Justice, with him on the briefs), Washington, D.C., for Defendants–Appellees.

Karen Budd-Falen and Kathryn Brack Morrow, Cheyenne, Wyoming; A. Blair Dunn and Patrick J. Rogers, Albuquerque, New Mexico, for Defendants–Intervenors–Appellees.

Jay C. Johnson and Kathryn Kusske Floyd of Venable LLP, Washington, D.C., for Amici Curiae.

---

Before **BACHARACH**, **McKAY**, and **McHUGH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

This appeal involves environmental challenges to a federal agency's decisions to grant inspection services for the slaughter and processing of horses and other equines at three slaughterhouses. In the proceedings below, the district court affirmed the agency's grants of inspection. Plaintiffs—various organizations and individuals opposed to horse slaughter—then filed this appeal to challenge the district court's decision. However, one slaughterhouse subsequently withdrew its application for inspection, a second slaughterhouse surrendered its grant of equine inspection in order to obtain a grant of inspection for cattle slaughter, and the third slaughterhouse failed to successfully challenge a state permitting decision to allow only non-equine slaughter at the facility.

-3-

Moreover, the current congressional appropriations act prohibits funding for equine slaughter inspections. We accordingly dismiss this appeal and vacate the district court's decision based on mootness.

## I.

Under the Federal Meat Inspection Act, "amenable species" of livestock—including horses, mules, and other equines—may be slaughtered for human consumption only after undergoing federal inspection. 21 U.S.C. § 603(a). Accordingly, slaughter facilities wishing to conduct equine slaughter operations must apply for a grant of inspection services from the Food Safety Inspection Service, a branch of the U.S. Department of Agriculture. By regulation, equines may not be slaughtered at the same facility as other livestock. 9 C.F.R. § 305.2(b). Thus, a grant of inspection for equines will cause the agency to withdraw any previous grant of inspection for other species, and, conversely, a grant of non-equine inspection causes the withdrawal of any previous equine grant. (*See* Appellants' App. at 411.)

Between fiscal years 2006 and 2011, Congress prohibited the use of appropriated funds for ante-mortem inspection of equines, thus effectively preventing commercial horse slaughter from occurring in the United States. However, the 2012 and 2013 appropriations acts did not include this prohibition, and FSIS accordingly began moving forward with plans to resume federal inspection of commercial equine slaughter.

In June 2013, FSIS issued Directive 6130.1, which provides instructions to FSIS inspectors on how to perform ante-mortem and post-mortem inspections of equine for

-4-

slaughter. Among other things, the Directive provides for intensified random-drug-residue testing of equines and explains how such testing should be conducted.

After issuing the Directive, FSIS issued grants of inspection for equine processing at two slaughterhouses—Valley Meat Company of Roswell, New Mexico, and Responsible Transportation LLC of Sigourney, Iowa. The agency also announced it was prepared to grant inspection to a third slaughterhouse, Rains Natural Meats of Gallatin, Missouri, but it did not issue the grant at that time because the district court had already issued a temporary restraining order in this case.

Following FSIS's issuance of the grants of inspection to the first two slaughterhouses, Appellants commenced this federal action. In their complaint, Appellants claimed the agency violated the National Environmental Policy Act by preparing the Directive and issuing the grants of inspection without first preparing an Environmental Impact Statement or Environmental Assessment to evaluate the possible environmental impacts of equine slaughter operations. The district court initially granted a temporary restraining order against the agency, but, after further consideration, it concluded that the agency was not required to prepare an EIS or EA before issuing the Directive and the grants of inspection. The court accordingly vacated the restraining order and dismissed the action. Appellants then filed this appeal.

Several recent developments have significantly changed the status of this litigation. First, Congress again included a funding prohibition for equine inspection services in its 2014 and 2015 appropriations acts. Second, Valley Meat Company

decided to abandon all plans to slaughter equines and asked FSIS to withdraw its grant of inspection. Third, Responsible Transportation LLC voluntarily surrendered its grant of inspection for equines in order to obtain cattle slaughter inspection services instead. Finally, the Missouri Department of Natural Resources issued Rains Natural Meats a permit allowing the processing of only non-equine animals. Although Rains filed an administrative appeal from this decision, it subsequently chose to voluntarily dismiss the appeal and continue or resume non-equine slaughter operations. Accordingly, like Responsible Transportation, Rains is currently operating under a non-equine grant of federal inspection.

## II.

Based on all of these factual developments, we find the case to be moot, and we therefore dismiss the appeal for lack of jurisdiction.

"Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994). A case is moot where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980), or where the "relief sought can no longer be given or is no longer needed," *In re Jennings Oil Co.*, 4 F.3d 887, 889 (10th Cir. 1993). Stated differently, "[t]he crucial question is whether granting a *present* determination of the issues offered will have some

effect in the real world." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) (internal quotation marks omitted).

In this case, the relief Appellants sought was to set aside the grants of equine inspection to Valley Meat and Responsible Transportation, as well as the intended grant of equine inspection to Rains Natural Meats. The parties are in agreement that Valley Meat's voluntary withdrawal of its grant of inspection and its decision to abandon all plans for equine slaughter have mooted the claims related to this facility. As for the other two grants, Appellants assert that their challenges to these grants have likewise become moot due to subsequent developments, while Appellees argue that there remains a live case or controversy regarding these grants. After due consideration, we agree with Appellants that their challenges to all three of the grants of inspection are now moot because a present determination of the issues presented would have no real-world effect.

It is undisputed that Responsible Transportation surrendered its grant of equine inspection in order to process non-equine species at its facility. Nevertheless, the federal Appellees argue that Responsible Transportation "may seek to switch back to equines after the funding ban expires," (Appellees' Br. at 27 n.10). They suggested at oral argument that the surrendered grant of inspection is still relevant to the real world because, if Congress again removes the funding ban and Responsible Transportation then re-applies for an equine grant of inspection, the agency may rely on some of its determinations relating to the initial grant in order to conduct a much more limited review of the new application. However, we are persuaded the contingent possibility that

Responsible Transportation might apply for a new grant of equine inspection does not give rise to a current case or controversy, regardless of whether the former grant could have some future influence on the agency's consideration of a hypothetical new request for equine inspection. If Congress chooses to fund equine inspection again, if Responsible Transportation then chooses to apply for a new grant of equine inspection, and if FSIS decides to issue a grant of inspection to Responsible Transportation, then an active case or controversy may arise—and it may even resurrect some of the issues that are no longer live in this case. However, this speculative possibility of a future controversy does not provide us with Article III jurisdiction to evaluate Appellants' challenges to a surrendered grant of inspection that now has no force or effect in the real world. "We are without power to render an advisory opinion on a question simply because we may have to face the same question in the future." *NLRB v. Globe Sec. Servs., Inc.*, 548 F.2d 1115, 1118 (3d Cir. 1977).

As for Rains Natural Meats, it is undisputed this facility is currently processing non-equine species and lacks the necessary state permits to switch to equine slaughter, even if the funding ban ends and FSIS goes through with its intended plans to issue Rains a grant of equine inspection. In their brief, the federal Appellees argue that Appellants' challenge to the intended grant of equine inspection to Rains "may be become moot if the state proceedings ultimately prevent [Rains] from slaughtering horses for human consumption," but they contend that "the final outcome of those state proceedings is unknown." (Appellees' Br. at 27.) However, Appellees present neither argument nor

authority to refute Appellants' contention that the state's decision not to allow equine processing at Rains' facility became final when Rains decided to voluntarily dismiss its administrative appeal of the permitting decision. As with Responsible Transportation, it is possible that a live case or controversy may arise in the future if Congress decides to allow funding for equine inspections, Rains Natural Meats decides to switch from non-equine slaughter to equine slaughter, the state permitting authority changes its decision, and FSIS follows through with its original plans of issuing a grant of equine inspection to Rains. However, this contingent possibility does not defeat the current mootness of Appellants' challenges to an intended grant of inspection that was not issued and would have no current effect in the real world even if it were due to both the congressional funding ban and the final state permitting decision. *Cf. Jones v. Temmer*, 57 F.3d 921, 923 (10th Cir. 1995) ("[D]efendants assert that the claims are not moot because the Colorado legislature remains free to reinstate the old law at a later date. We view this possibility as too conjectural and speculative to avoid a finding of mootness.").

We are not persuaded by Appellees' argument that this case falls under the "narrow exception" to the mootness doctrine for issues "capable of repetition, yet evading review." *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1229 (10th Cir. 2012) (internal quotation marks omitted). Although it is possible the legal issues raised in this case may arise again, there is no evidence these issues will evade judicial review in the future. *See Rio Grande Silvery Minnow v. Keys*, 355 F.3d 1215, 1220 (10th Cir. 2004). Appellees speculate that Congress may again open up a brief window in which funding

for equine inspections will be permitted, only to slam this window shut again before challenges to environmental decisions regarding equine inspections can be fully litigated in court proceedings. However, this bare speculation cannot substitute for actual "evidence from which we might infer that this governmental behavior is *necessarily* of short duration." *Wyoming v. U.S. Dep't of Interior*, 674 F.3d at 1229 (internal quotation marks, ellipses, and brackets omitted); *cf. United States v. Seminole Nation*, 321 F.3d 939, 943 (10th Cir. 2002) (applying the "capable of repetition, yet evading review" exception to review challenges to temporary regulatory orders that were necessarily of short duration because, by statute, they would cease to be in effect no later than ninety days after their issuance). Similarly, we will not invoke this narrow exception to the mootness doctrine based on Appellees' speculation that slaughterhouses in future cases may again switch to non-equine slaughter while litigating the legality of their equine grants of inspections. We are simply not convinced that the controversies involved in this case are "by nature, so ephemeral as to elude the processes of judicial review." *Beattie v. United States*, 949 F.2d 1092, 1094 n.2 (10th Cir. 1991); *cf. DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974) ("Moreover, just because this particular case did not reach the Court until the eve of the petitioner's graduation from law school, it hardly follows that the issue he raises will in the future evade review.").

Finally, Appellees argue that the case is not moot because Appellants' complaint challenged the Directive which provided instructions for federal equine inspections as well as the equine inspection grants themselves. However, since the only grants of equine

inspection issued by FSIS have been withdrawn or surrendered, the intended grant to Rains has been made ineffective by a state permitting decision, and Congress has prohibited the funding of equine inspections. Any present determination of the controversy regarding the Directive would have no effect in the real world. Appellants' challenges to the Directive were based on the alleged environmental effects of the equine slaughter operations whose inspections would have been conducted according to the Directive's instructions. Since the resumption of equine slaughter operations is now only speculative, however, Appellants' challenges to the Directive do not present a current case or controversy. If Congress decides to fund equine inspections again, and if FSIS issues a grant of inspection to a slaughterhouse that is able to obtain the necessary state permits to operate, the Directive may then have an effect on the real world. At this time, however, we lack Article III jurisdiction to consider Appellants' challenges to the Directive—an agency document which is not currently in use and which has no definite future. We therefore conclude that this case is moot in its entirety.

Appellants contend we should vacate the district court's judgment because appellate review of the district court's decision has been prevented by mootness that was out of Appellants' control. Vacatur is generally appropriate when a case becomes moot because of happenstance or the prevailing party's unilateral action, based on the underlying "equitable principle [that] a party should not have to bear the consequences of an adverse ruling when frustrated by the vagaries of the circumstances." *Rio Grande Silvery Minnow*, 355 F.3d at 1221 (internal quotation marks omitted); *see also Amoco Oil*

*Co. v. U.S. EPA*, 231 F.3d 694, 698 (10th Cir. 2000); *Jones*, 57 F.3d at 923. The issues in this appeal were mooted by unilateral decisions made by the slaughterhouse Intervenors–Appellees and by various government officials, not by any action of Appellants. We therefore agree with Appellants that vacatur of the district court's judgment is appropriate.

## III.

For the foregoing reasons, the district court's judgment is **VACATED**, and the appeal is **DISMISSED** as moot.