**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 5, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

G.H. DANIELS III & ASSOCIATES,
INC.; HANDY ANDY SNOW
REMOVAL,

     Plaintiffs- Appellants,

v.

THOMAS E. PEREZ, Secretary of the U.S.
Department of Labor; RAND BEERS, U.S.
Department of Homeland Security; JOHN
KERRY, Secretary of State; LORETTA E.
LYNCH, United States Attorney General,[*]

     Defendants – Appellees,

 and

OUTDOOR AMUSEMENT BUSINESS
ASSOCIATION,

     Amicus Curiae.

No. 13-1479
(D.C. No. 1:12-CV-01943-CMA-MJW )
(D. Colo.)

**AMENDED ORDER AND JUDGMENT**[**]

---

[*] In accordance with Fed. R. App. P. 43(c)(2), Loretta E. Lynch is substituted for
Eric H. Holder, Jr., as a defendant-appellee in this action.

[**] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R.
34.1(G). This case is submitted for decision on the briefs.

    This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).

(Continued . . .)

Before **McHUGH**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

---

The H-2B visa program allows the Department of Homeland Security (DHS) to admit foreign workers into the United States to perform temporary nonagricultural services and labor.[1]  Congress authorized (and charged) DHS with the decision-making, but as it stands the Department of Labor (DOL) also has a role.  Until December 2008, its role was merely advisory—if an employer satisfied certain conditions DOL would issue a temporary labor certification (certification).  Obtaining the "advice" of DOL (in the form of the grant or denial of a certification) was a pre-condition to DHS's decision on the matter, but DOL's denial of a certification was neither final nor necessarily preclusive. Regardless of DOL's action, an employer was permitted to make its case to DHS, which decided the matter de novo, even when doing so involved evidence not considered by, or even presented to, DOL.  DHS always made the final decision about admitting temporary workers irrespective of DOL's "advice."  All this was quite consistent with the relevant statute.  But things changed.

---

Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished).  *Id.*

[1] The H-2A visa program is a companion program for agricultural workers.  *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).  When the Immigration and Nationality Act (INA) was first enacted, there was one visa program governing the admission of temporary unskilled foreign workers, the H-2 visa program.  *See* INA, Pub. L. No. 82-414 § 101(a)(15)(H)(ii), 66 Stat. 163, 168 (1952).  In 1986, Congress split the H-2 program into two separate programs, the H-2A and H-2B program.  *See* Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99–603, § 301(a), 100 Stat. 3359 (1986).

In December 2008 DOL and DHS each promulgated regulations governing the H-2B program.[2] Under those regulations, if DOL finally denies an employer's request for a certification, the matter is ended—absent a DOL certification an employer cannot petition DHS for the admission of H-2B workers. The tortured regulatory history has complicated things, but it ultimately comes down to this: by regulatory decree DOL has supplanted DHS as final decision-maker to the extent that it has exclusive veto power over certain applications.

The issue we confront is whether an agency may, without Congressional authorization, delegate its decision-making responsibility to an entirely different agency. Courts are quite tolerant of the administrative practices of agencies, but passing the buck on a non-delegable duty exceeds elastic limits. This case is remanded to the district court to enter judgment consistent with this order and judgment.

## I. Plaintiffs

G.H. Daniels, III & Associates (Daniels) and Handy Andy Snow Removal are small landscaping and snow removal companies, respectively, with their principal places of business in Gypsum, Colorado. Every year they rely on H-2B workers to perform seasonal work. They claim the 2008 regulations have improperly thwarted their ability to obtain H-2B workers. One of their arguments challenges DHS's regulations as an impermissible subdelegation of its H-2B decision-making authority and responsibilities

---

[2] Although DHS and DOL issued the regulations in December 2008, they did not take effect until January 18, 2009. 73 Fed. Reg. 78,020, 78,020 (Dec. 19, 2008) (DOL); 73 Fed. Reg. 78,104, 78,104 (Dec. 19, 2008) (DHS). Nevertheless, we will refer to the regulations as the 2008 regulations.

to DOL. Also, according to them, DOL's actions on their applications for certifications for the 2010, 2011, and 2012 seasons were unlawful under the Administrative Procedure Act (APA).

## II. Subdelegation

*A. Statutory Background and District Court Decision*

The H-2B visa program, named for the statutory section creating it,[3] allows employers to petition for the admission of foreign workers into the United States to perform temporary nonagricultural work (1) if "unemployed persons capable of performing such service or labor cannot be found in this country," 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and (2) when doing so will not "adversely affect the wages and working conditions of similarly employed United States workers" (the "if" and "when").[4] 8 C.F.R. § 214.2(h)(6)(iii)(A). Congress charged DHS[5] with implementation of the statute "after consultation with appropriate agencies of the Government." 8 U.S.C. §

---

[3] *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b) (defining an H-2B worker as a nonimmigrant alien who has "a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform . . . temporary [nonagricultural] service or labor").

[4] The H-2B program is used primarily by small businesses like Daniels and Handy Andy. *Bayou Lawn & Landscape Servs. v. Sec'y of Labor*, 713 F.3d 1080, 1083 (11th Cir. 2013).

[5] The INA initially charged the Attorney General with this task but he delegated his responsibilities (as authorized by the statute) to the Immigration and Naturalization Service (INS). *See* INA, § 103(a), 66 Stat. at 173-74; *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 595 (1982). In 2002, Congress abolished INS and transferred responsibility for the administration of the country's immigration laws, including the H-2B visa program, to DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 402, 471, 116 Stat. 2135 (2002).

1184(c)(1). DHS chose to consult with DOL by requiring employers seeking to hire H-2B workers to obtain a certification from DOL prior to petitioning DHS for the temporary admission. 8 C.F.R. § 214.2(h)(6)(iii)(C), (iv)(A). The certification constitutes DOL's "advice" as to the "if" and "when" of the statute. 8 C.F.R. § 214.2(h)(6)(iii)(A).

Historically, DHS would temporarily admit the workers notwithstanding DOL's denial of a certification. *See* 8 C.F.R. § 214.2(h)(6)(iv)(D), (E) (2008). The landscape changed in December 2008 with companion rulemaking by DHS and DOL. 73 Fed. Reg. 78,020 (Dec. 19, 2008) (DOL); 73 Fed. Reg. 78,104 (Dec. 19, 2008) (DHS). Collectively, these regulations sometimes put the cart before the horse; DHS's plenary review and final decision were supplanted in some cases by an administrative review process before DOL. Under DOL's 2008 regulations, if the certifying officer decides the employer's application for a certification fails to satisfy one or more criteria for certification, the officer must issue a "Request for Further Information" to the employer. 73 Fed. Reg. at 78,060 (to be codified at 20 C.F.R. § 655.23(c)(1)). The employer has seven days in which to respond to the request. *Id.* (to be codified at 20 C.F.R. § 655.23(c)(2)(ii)). If an employer fails to timely comply with the request, the certification may be denied on that basis. *Id.* (to be codified at 20 C.F.R. § 655.23(d)). And if, after review of all of the information the employer provides, the certifying officer denies a certification, the employer may appeal to the DOL's Board of Alien Labor Certification Appeals (BALCA). *Id.* at 78,063 (to be codified 20 C.F.R. § 655.33(a)). But, unlike prior "appeals" to DHS, appeals to BALCA are limited to the evidence before the certifying officer; the employer is not permitted to present new evidence. *Id.* (to be

- 5 -

codified at 20 C.F.R. § 655.33(a)(5)).  Moreover and most important, BALCA's decision

is sometimes final; if DOL's administrative review process results in a denial of a

certification, the employer has no further recourse.  73 Fed. Reg. at 78,127, 78,129

(codified at 8 C.F.R. § 214.2(h)(6)(iii)(C), (iv)(A)).  Effectively DOL has an

unsupervised veto in those cases.

The district judge concluded DOL had the authority to issue the 2008 regulations

and rejected any notion that DHS's certification requirement constituted a subdelegation.

While she recognized a failure to obtain a certification effectively precludes DHS from

considering an employer's H-2B petition, she nevertheless concluded this process did not

divest DHS of its status as the final decision-maker.[6]

---

[6] A lot has changed since the district judge's decision issued.  A judge in the Northern District Court of Florida, concluding DOL has no regulating authority, permanently enjoined DOL from enforcing its 2008 regulations, as well as those it issued in 2012.  *See Perez v. Perez*, No. 14-cv-682/MCR/EMT, Docs. 14 & 15 (N.D. Fla. Mar. 4, 2015) (2008 regulations); *Bayou Lawn & Landscape Servs. v. Perez*, --- F. Supp.3d ---, No. 3:12-cv-183/MCR/CJK, 2014 WL 7496045, at *4-7 (N.D. Fla. Dec. 18, 2014) (2012 regulations).  DOL construed these decisions as imposing a nationwide injunction on the enforcement of its 2008 and 2012 regulations.  Because DOL had no prior regulations to reinstate, it was unable to process or issue any certifications, effectively shutting down the H-2B program.  80 Fed. Reg. 24,042, 24,046 (Apr. 29, 2015).  To get the program back up and running, DOL and DHS got creative.  Because Congress gave DHS the authority to promulgate regulations, *see* 8 U.S.C. §§ 1103(a)(3), 1184(a)(1), DHS and DOL decided to jointly issue an interim final rule governing the certification process in the H-2B program "[t]o ensure that there can be no question about the authority for and validity of the regulations in this area."  80 Fed. Reg. at 24,045.  The interim final rule is virtually identical to DOL's 2012 regulations.  *Id.* at 24,043.

Normally, the passage of a superseding rule would cause us to question our jurisdiction.  *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109, 1111-12 (10th Cir. 2010) ("We have no subject-matter jurisdiction if a case is moot"; concluding claim that federal agencies had violated Endangered Species Act by

(Continued . . .)

*B. Discussion*

Essentially Daniels' and Handy Andy's arguments come down to this: DHS's 2008 regulations constitute an impermissible subdelegation of its H-2B responsibilities by giving DOL exclusive authority to determine the threshold eligibility of potential H-2B temporary workers.

We start with the statutes. Section 1184(c)(1) of the INA says DHS shall determine whether to allow for the admission of H-2B workers "after consultation with appropriate agencies of the Government." But Congress said nothing concerning the appropriate consulting agencies for the H-2B program and provided no guidance as to the nature or scope of that "consultation."[7]

---

failing to consult prior to issuing their 2001 and 2002 biological opinions was rendered moot by issuance of 2003 biological opinion, which superseded the prior opinions); *see also Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (issuing of new rule by Forest Service to replace Roadless Rule mooted appeal because "portions of the Roadless Rule that were substantively challenged . . . no longer exist[ed]" and "the alleged procedural deficiencies of the Roadless Rule [were] now irrelevant because the replacement rule was promulgated in a new and separate rulemaking process").

However, although Daniels and Handy Andy frame the issue as DOL having no authority to issue the 2008 regulations, the crux of their complaint is that the 2008 regulations preclude them from petitioning the responsible agency, DHS, for the admission of H-2B workers if they have not first obtained a certification from DOL because DOL has effectively determined the outcome. DOL's 2008 regulations do set up an administrative review procedure before that agency, but DHS's 2008 regulations, 8 C.F.R. § 214.2(h)(6)(iii)(C), (iv)(A), pretermit DHS's process if DOL denies a certification. Hence, their beef is with DHS's regulations, not DOL's. And because the interim final rule did nothing to alter those regulations (they remain on the books today), a challenge to them is not moot and we must consider whether those regulations constitute an impermissible subdelegation of DHS's responsibilities.

[7] In contrast, for purposes of the H-2A agricultural program, Congress designated the consulting agencies as the DOL and Department of Agriculture and said consultation

(Continued . . .)

DHS, the administrating agency, has filled the vacuum via regulation. Under its regulations, the appropriate consulting agency is DOL and its consultation with DOL involves seeking "advice" in the form of a certification (as previously described). 8 C.F.R. § 214.2(h)(6)(iii)(A), (C), (iv)(A). When Congress leaves a gap in a statute administered by an agency, its intent is that the agency will resolve the ambiguity, not the courts. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). Thus we are only permitted to decide whether DHS's solution is "a permissible construction of the statute."[8] *Id.* at 843.

As part of its decision to allow for the admission of H-2B workers, DHS must determine the "if" and "when" of the statute, something within the expertise of DOL. *See* http://www.dol.gov/opa/aboutdol/mission.htm (stating the mission of DOL is "[t]o foster, promote, and develop the welfare of the wage earners, job seekers, and retirees of the United States; improve working conditions; advance opportunities for profitable

---

takes the form of a certification from DOL that the required labor conditions exist. *See* 8 U.S.C. §§ 1184(c)(1), 1188(a).

[8] Congress gave DHS the authority to promulgate regulations to carry out its duties under the INA, including the administration of the H-2B program, *see* 8 U.S.C. §§ 1103(a)(3), 1184(a)(1); it promulgated 8 C.F.R. § 214.2(h)(6)(iii)(C), (iv)(A) pursuant to that authority. *See* 73 Fed. Reg. at 78,127. Therefore, DHS's interpretation of the INA in this case is entitled to *Chevron* deference. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) ("We hold that administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."); *but see FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-61 (2000) (recognizing that in "extraordinary cases" *Chevron* deference may not apply to an agency's construction of a statute that it administers).

employment; and assure work-related benefits and rights") (last visited August 31, 2015).

DHS, quite sensibly, relies on that expertise. Moreover, DOL is one of the consulting agencies specifically identified in the companion H-2A program. *See supra* n.7. DHS reasonably decided DOL was an "appropriate agenc[y] of the Government" with which to consult.[9]

However, DHS's formulation of the scope and nature of DOL's "consultation" is unreasonable. In 1952, just as today, "[c]onsultation" meant "the action of consulting or taking counsel together; deliberation, conference." Oxford English Dictionary 885 (1st ed. 1933); *see also*

http://www.oed.com/view/Entry/39957?redirectedFrom=consultation#eid (last visited August 31, 2015). The term "consult" meant (as it does today) "[t]o take counsel together, deliberate, confer" and "to seek advice from." Oxford English Dictionary 884 (1st ed. 1933); http://www.oed.com/view/Entry/39952?rskey=PPsxUZ&result=3#eid (last visited June 4, 2015). Black's Law Dictionary defined "consultation" as the "[d]eliberation of persons on some subject." Black's Law Dictionary 389 (4th ed. 1951). These definitions of "consultation" certainly support DHS's decision to seek DOL's "advice" regarding aspects of its decision whether to admit H-2B workers. Moreover, it seems reasonable that that "advice" can take the form of a temporary labor certification.

---

[9] While recognizing as a practical matter DOL's need to structure the certification process, we offer no opinion on whether it has the authority to issue regulations. The problem here is not the certification process, but the ultimate finality entailed by a denial of a certification.

But advice is only that; it can, and sometimes should, be prudently ignored. Yet DHS currently has no ability to ignore DOL's advice if a certification has been denied. DOL has effectively supplanted DHS as final decision-maker as to whether to allow for the admission of some H-2B workers. That is a subdelegation. *See Fund for Animals v. Kempthorne*, 538 F.3d 124, 133 (2d Cir. 2008) ("An agency delegates its authority when it shifts to another party almost the entire determination of whether a specific statutory requirement has been satisfied or where the agency abdicates its final reviewing authority.") (citation and quotations omitted). And it comes in spite of Congress's express delegation of that decision to DHS. *See* 8 U.S.C. § 1184(c)(1).

The government says there is no subdelegation. In so arguing, it relies on the Third Circuit's reasoning in *Louisiana Forestry Association v. Secretary U.S. Department of Labor*, where the court rejected the plaintiffs' argument that DHS had subdelegated its authority to decide H-2B petitions to DOL. 745 F.3d 653, 671-73 (3d Cir. 2014). Instead, the court viewed the requirement that employers obtain a DOL certification prior to petitioning DHS for the admission of H-2B workers as simply a pre-condition for DHS's approval of an employer's H-2B visa application. *Id.* at 672-73. The *Louisiana Forestry* court relied on *U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 566 (D.C. Cir. 2004), where the D.C. Circuit recognized that an outside party may legitimately provide input into an agency's decision-making process if that input establishes a reasonable condition for granting agency approval or constitutes fact-gathering or advice-giving. *Id*. According to the Third Circuit, while DHS's decision whether to admit H-2B workers hinges in part on DOL's issuance of a certification, DHS

- 10 -

still has to decide whether the other criteria for admission of H-2B workers has been satisfied, for example, whether the alien intends to remain in the United States on a temporary basis. *Id.* But, as Daniels and Handy Andy aptly point out, this is true only when DOL grants a certification. When DOL denies the certification, DHS has nothing to add; DOL has had the final say.

Nor is DOL's role in the H-2B program limited to fact-gathering or advice-giving. Certainly, DOL makes factual determinations in resolving whether to grant an employer a certification for it must decide whether domestic workers are available and whether the employment of foreign workers will hurt the wages and working conditions of the American workforce. And DHS's regulations refer to a certification as DOL's "advice" to DHS as to whether the necessary showings have been made. 8 C.F.R. § 214.2(h)(6)(iii)(A). But, as we have explained, by prohibiting employers from petitioning DHS for the admission of H-2B workers when DOL denies a certification, DOL's role is transformed from fact-gatherer and advice-giver to final decision-maker.

Having concluded there is a subdelegation in this case, the next question is whether that subdelegation is improper. "The relevant inquiry in any subdelegation challenge is whether Congress intended to permit the delegate to subdelegate the authority conferred by Congress." *United States v. Widdowson*, 916 F.2d 587, 592 (10th Cir. 1990), *vacated on other grounds*, 502 U.S. 801 (1991). In general, "[w]hen a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *See U.S. Telecom*, 359 F.3d at 565 (collecting cases); *see also*

- 11 -

*Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1190 (10th Cir. 2014) ("Absent some indication in an agency's enabling statute that subdelegation is forbidden, subdelegation to subordinate personnel within the agency is generally permitted."). On the other hand, if the subdelegation is to a non-subordinate officer or agency, i.e., an outside party, the presumption does not apply. *U.S. Telecom*, 359 F.3d at 565. Indeed, "subdelegations to outside parties are assumed to be improper absent an affirmative showing of congressional authorization." *Id.* As the D.C. Circuit explained:

> This distinction is entirely sensible. When an agency delegates authority to its subordinate, responsibility—and thus accountability—clearly remain with the federal agency. But when an agency delegates power to outside parties, lines of accountability may blur, undermining an important democratic check on government decision-making. Also, delegation to outside entities increases the risk that these parties will not share the agency's national vision and perspective, and thus may pursue goals inconsistent with those of the agency and the underlying statutory scheme. In short, subdelegation to outside entities aggravates the risk of policy drift inherent in any principal-agent relationship.

*Id.* at 565-66 (citations and quotations omitted).

DOL is not a subordinate agency of DHS. And there is no statute authorizing the subdelegation—indeed Congress gave DHS only the authority to consult with other government agencies. Absent Congressional authorization, DHS's subdelegation in this case is improper.

In so concluding, we recognize DHS, as administrator of the INA, has broad discretion in filling statutory gaps, like the ones present in this case. But that discretion is not unlimited. It is circumscribed by the language of the statute and the general prohibition against subdelegation to outside parties absent congressional authorization. The statutory language in this case—"consultation"—cannot reasonably bear the

construction DHS has given it—congressional authority to subdelegate its authority and

responsibilities under the H-2B visa program to an outside agency.[10]

---

[10] In a petition seeking panel rehearing of the original order and judgment issued in this appeal on September 3, 2015, the government argues the subdelegation issue was not raised in the district court, the district judge did not address it, and the parties did not raise it in their appellate briefing. As a result, it says we "overlooked" 8 U.S.C. § 1103(a)(6) (and its implementing regulation 8 C.F.R. § 2.1), which explicitly authorizes DHS to delegate any of its authority under the INA, including its decision-making authority under the H-2B program, to the DOL. *See* Fed. R. App. P. 40 (petitions for panel rehearing are permitted for issues "the court has overlooked or misapprehended"); 10th Cir. R. 40.1 ("A petition for rehearing should not be filed routinely. Rehearing will be granted only if a significant issue has been overlooked or misconstrued by the court.").

But we did not make up the subdelegation argument. Daniels and Handy Andy raised it in the district court and the district judge rejected it. *See* Dist. Ct. Doc. 2 at 41-42, 59-60 & Doc. 54 at 11-12. It was also raised on appeal. *See* Appellant's Op. Br. at 2-4; Appellant's Reply Br. at 3-14. The Government acknowledges as much in its appellate brief:

> G.H. Daniels also mistakenly frames the essential issue in this case by arguing that DHS sub-delegated its rulemaking authority to DOL . . . . Contrary to G.H. Daniels' assertions, DOL does not claim authority to engage in rulemaking based on DHS's sub-delegation, and the Third Circuit recently held that the DHS's regulations requiring advice from DOL do not effect a delegation of authority but establish a reasonable condition for making a determination regarding the importation of foreign workers . . . .

(Govt's Response Br. at 22-23.)

What the government did not raise, however, was any argument that 8 U.S.C. § 1103(a)(6) gave DHS authority to subdelegate its H-2B decision-making authority to DOL. Its argument has always been there is no subdelegation. It clearly waived any reliance on 8 U.S.C. § 1103(a)(6) in this case or, at best, forfeited the issue. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011) ("If the theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it"; "[u]nlike waived theories, we will entertain forfeited theories on appeal, but we will reverse . . . . only if failing to do so would entrench a plainly erroneous result."). Whether waived or forfeited, the issue is certainly not grounds for panel rehearing. *See United States v. Charley*, 189 F.3d 1251, 1264 n.16 (10th Cir. 1999) ("petitions for rehearing are permitted to enable parties to notify, and to correct, errors of fact or law on the issues already presented; they are not meant to permit parties to assert new grounds for relief" or to shift their positions) (quotations omitted).

(Continued . . .)

### III. Administrative Procedure Act

According to Daniels and Handy Andy, DOL's actions on their applications for certifications for the 2010, 2011, and 2012 seasons were unlawful under the APA. The district judge construed the complaint as challenging only DOL's denial of Daniels' application for the 2012 season. She granted the government's motion to dismiss as to this claim, concluding DOL's actions were neither arbitrary nor capricious under the APA. On appeal, the government also limits the complaint to the 2012 season and argues we lack jurisdiction because the 2012 landscaping season has "long since transpired" and therefore "the underlying question whether the agency's decision was valid is no longer a

---

Moreover, it is unclear whether 8 U.S.C. § 1103(a)(6) is determinative of the issue. It provides:

> [The Secretary of Homeland Security] is authorized to confer or impose upon any employee of the United States, with the consent of the head of the Department or other independent establishment under whose jurisdiction the employee is serving, any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon officers or employees of the Service.

Had the government's 8 U.S.C. § 1103(a)(6) argument been timely raised and briefed, it would have prompted a decision. And if the argument were clearly correct, necessarily suggesting our order and judgment was incorrectly decided, we might be inclined to rehear the matter. But Amicus Outdoor Amusement Business Association has provided credible arguments as to why the statute cannot support the government's belated argument. Among other things, it says the express scope of the statute is limited to the delegation of <u>powers, privileges, or duties</u> to <u>any employee of the United States</u> if those powers, privileges, or duties are conferred or imposed by the INA or regulations <u>upon officers or employees of the Service</u>. According to Amicus, the statute does not allow for the delegation of <u>functions </u>(administration of the H-2B visa program) to another <u>agency</u> (DOL) when those functions are explicitly designated by Congress to be exercised by the <u>Secretary of Homeland Security</u>.

It is too late in the process to entertain waived/forfeited arguments that may or may not be meritorious. The government's request for panel rehearing is being denied via separate order.

- 14 -

live issue or controversy in this case." (Appellees' Answer Br. at 43.)

As the trial judge appropriately noted, the complaint is not a model of clarity and violates Rule 8(a)(2) of the Federal Rules of Civil Procedure which requires it to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Nevertheless, the complaint did raise allegations concerning Daniels' and Handy Andy's attempts to obtain certifications from DOL for the 2010, 2011, and 2012 seasons. Their appellate brief also challenges DOL's actions as to their applications for certifications for these three seasons. We consider the claims as to all three seasons, but conclude they are moot (and were in fact moot at the time the district judge issued her decision).

The Constitution gives federal courts the power to adjudicate only "Cases" and "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. "Mootness doctrine exists to help give meaning to this command by requiring us to ensure that we offer opinions only when doing so will have some effect in the real world." *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009) (quotations omitted). "A case becomes moot . . . when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, --- U.S. ---, 132 S. Ct. 2277, 2287 (2012) (quotations omitted). A case that was justiciable when litigation began can become moot if the underlying controversy "ceases to exist." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (quotations omitted).

In their complaint, Daniels and Handy Andy requested that DOL's actions with respect to their applications for the 2010, 2011, and 2012 seasons be declared unlawful under the APA and asked for a remand to DOL to require it to either approve or

reconsider their applications. But the 2010, 2011, and 2012 seasons are long over. Because the employment of H-2B workers is limited to the season identified in the certification, *see* 8 C.F.R. § 214.2(h)(9)(iii)(B), requiring DOL to reconsider or grant their applications would have no real life effect. Similarly, DOL's actions were tethered to the specific applications and those applications applied to seasons that have expired. Any declaration that DOL's actions with respect to those applications were improper would thus amount to nothing more than a "retrospective opinion that [Daniels and Handy Andy were] wrongly harmed by [DOL]" and would do nothing to affect the behavior of DOL toward them. *See Jordan*, 654 F.3d at 1025 ("[I]n the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant."); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1109, 1112-13 (10th Cir. 2010) (concluding claim seeking declaration that 2001 and 2002 biological opinions were insufficient due to agencies' failure to consult was moot because the duty to consult is tethered to the development of a biological opinion and the 2001 and 2002 biological opinions had been superseded by the 2003 biological opinion).

Nevertheless, Daniels and Handy Andy say their claims are not moot because they are "capable of repetition, yet evading review." This exception to the mootness doctrine applies if two prerequisites are satisfied: "(1) the duration of the challenged action must be too short to be fully litigated prior to its cessation or expiration; and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Hain v. Mullin*, 327 F.3d 1177, 1180 (10th Cir. 2003) (en banc). The

exception is "narrow" and is limited to "exceptional situations." *Jordan*, 654 F.3d at 1034–35 (quotations omitted).

Daniels and Handy Andy merely cite the exception; they offer no explanation as to why the exception applies here. For this reason alone we could decline to consider it. *Id.* at 1035 (stating the party seeking application of the exception bears the burden of showing it applies). But there is another reason. The second element has not been satisfied—it is unlikely Daniels and Handy Andy will be subjected to the same actions by DOL again. DOL's decisions on their 2010, 2011, and 2012 applications were particular to those applications. For instance, Daniels' 2010 "amended" application was denied because it sought to modify the place of work after it had already obtained a certification for that season. Similarly, DOL denied Daniels' 2012 application because it sought to amend a pending application with a new job location but failed to re-recruit domestic workers with the new job location. And Handy Andy asked DOL for an extension of time to respond to a "Request for Further Information" regarding its 2011 application because its attorney was on vacation. There is no indication that these circumstances will arise again, let alone that DOL will take similar actions on future applications. *See Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 569 (10th Cir. 2015) (stating the "speculative possibility of a future controversy does not provide us with Article III jurisdiction"; "[w]e are without power to render an advisory opinion on a question simply because we may have to face the same question in the future") (quotations omitted).

Because the APA claims were moot before the district judge entered judgment,[11] the proper remedy is vacatur and dismissal of the judgment as to those claims.[12] *See Rio Grande Silvery Minnow*, 601 F.3d at 1129 n.19 ("When a case becomes moot prior to final adjudication, the district court was without jurisdiction to enter the judgment, and vacatur and dismissal of the judgment is automatic.") (quotations omitted).

We **REVERSE** the district court's decision as to the claim of impermissible subdelegation of DHS's decision-making authority under the H-2B program to DOL. We **DISMISS** for want of jurisdiction the appeal as to whether DOL's denial of the

---

[11] Judgment was entered on September 19, 2013. Daniels' 2010 and 2012 landscaping seasons ran from April to November of 2010 and 2012, respectively. Handy Andy's 2011 snow removal season ran from November 2011 to April 2012. Thus, all three seasons expired before judgment. Indeed, it appears the claims concerning the 2010 and 2011 seasons were moot prior to the filing of the complaint on July 27, 2012.

[12] Daniels received a certification from DOL in early 2010 to employ H-2B workers in Eagle County, Colorado. It later attempted to amend that certification to include four other counties. Although DOL denied the amendment, Daniels nevertheless employed H-2B workers in those additional counties. As a result, DOL concluded Daniels had (1) willfully misrepresented a material fact on its certification application in violation of 20 C.F.R. § 655.60(a) (2008) and (2) substantially failed to meet a condition of the certification by placing H-2B workers outside the area of intended employment in violation of 20 C.F.R. § 655.60(b)(2008). It assessed Civil Monetary Penalties (CMPs) against Daniels totaling $25,000. *See* 20 C.F.R. § 655.65 (2008). Daniels and Handy Andy challenged the CMPs in their district court complaint. Since then, we have discovered that an Administrative Law Judge with DOL has affirmed the imposition of the CMPs. The district judge did not address the CMPs in her dismissal order. On appeal, Daniels and Handy Andy argue that because DOL improperly denied amendment of Daniels' 2010 application, the CMPs are also unlawful. Although whether DOL improperly denied amendment of the 2010 application is moot, the CMPs should be addressed on remand. The CMPs were imposed under DOL's 2008 regulations and those regulations have since been replaced by the interim final rule. Nevertheless, the interim final rule retains similar provisions, now codified at 29 C.F.R. §§ 503.19, 503.23. We leave it to the judge and parties on remand to hash out the CMPs issue, including the effect of the interim final rule on the CMPs.

applications for certifications for the 2010, 2011, and 2012 seasons violated the APA and **REMAND** to the district court with instructions to dismiss these claims for lack of jurisdiction.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge