**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 9, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID SCHELL; DONNA SCHELL;
RON OLIVER, individually, and as
representative parties on behalf of surface
owners,

      Plaintiffs - Appellees/Cross-
      Appellants,

v.

OXY USA INC.,

      Defendant - Appellant/Cross-
      Appellee.

Nos. 13-3297 & 13-3304

_____

**ORDER**
_____

Before **BRISCOE**, **HARTZ**, and **HOLMES**, Circuit Judges.
_____

These matters are before the court on the Petition for Rehearing or Rehearing En

Banc filed in Case No. 13-3297 by Defendant - Appellant/Cross-Appellee, OXY USA,

Inc. We also have a response from the Appellees in that appeal.

The petition for panel rehearing is granted in part to the extent of the modifications

set forth in the attached revised opinion. The remainder of the relief requested is denied.

The petition for rehearing en banc and the attached revised opinion were transmitted to all of the judges of the court who are in regular active service. As no member of the panel and no judge in regular active service requested that the court be polled, the suggestion for en banc rehearing is denied.

The mandate in Case No. 13-3304 is *sua sponte* recalled. The Clerk of Court is directed to issue the attached revised opinion in Case Nos. 13-3297 and 13-3304 as of the date of this order. Pursuant to Fed. R. App. P. 2 and 10th Cir. R. 2.1, the prohibition on successive petitions for rehearing found in 10th Cir. R. 40.3 is hereby suspended, such that any party to these appeals may file a petition for rehearing as to the attached revised opinion. Any such petition must be filed within 14 days of the date of this order and shall otherwise comply with all applicable federal and local rules.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

by: Chris Wolpert
Chief Deputy Clerk

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 9, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID SCHELL; DONNA SCHELL;
RON OLIVER, individually, and as
representative parties on behalf of
surface owners,

      Plaintiffs-Appellees/Cross-
      Appellants,

v.

OXY USA INC.,

      Defendant-Appellant/Cross-
      Appellee.

Nos. 13-3297 & 13-3304

---

**APPEALS FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF KANSAS
(D.C. No. 6:07-CV-01258-JTM-KMH)**

---

Marie R. Yeates, Vinson & Elkins LLP, Houston, Texas (Michael A. Heidler and
Conor P. McEvily, Vinson & Elkins LLP, Houston, Texas; Lisa T. Silvestri,
GableGotwals, Tulsa, Oklahoma; and Stanford J. Smith, Jr. and Marcia A. Wood,
Martin, Pringle, Oliver, Wallace & Bauer, Wichita, Kansas, with her on the
briefs), for Defendant-Appellant/Cross-Appellee.

Rex A. Sharp, Gunderson Sharp, LLP, Prairie Village, Kansas (Barbara C.
Frankland, Gunderson Sharp, LLP, Prairie Village, Kansas; and Lee Thompson,
Thompson Law Firm, Wichita, Kansas, with him on the briefs), for Plaintiffs-
Appellees/Cross-Appellants.

Before **BRISCOE**, **HARTZ**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Appellant and Cross-Appellee OXY USA Inc. ("OXY"), the defendant in the district court, appeals from the grant of summary judgment to Appellees and Cross-Appellants—a class of plaintiffs represented by David Schell, Donna Schell, and Ron Oliver—on the question of whether their oil and gas leases required OXY to make "free gas" useable for domestic purposes. OXY also appeals from the district court's certification of plaintiffs' class and the denial of a motion to decertify, and the district court's order to quash the deposition of an absent class member.

Plaintiffs cross-appeal from the district court's denial of their motion for attorneys' fees, litigation expenses, and an incentive award. Importantly, plaintiffs also move to dismiss the appeal as moot. OXY opposes dismissal for mootness, but argues that if we find mootness, we should vacate the district court's decision.

We hold that OXY's sale of the oil and gas leases at issue here mooted its appeal; therefore, we grant the plaintiffs' motion to dismiss. Nevertheless, we conclude that the cross-appeal has not been mooted by this sale, and exercising our jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment as

2

to the denial of attorneys' fees, litigation expenses, and an incentive award.

## I

This case is before us after seven years of litigation culminated in a summary judgment granting declaratory relief to the plaintiff class. Because we do not ultimately reach the merits of this dispute, we are brief in our recounting of the factual and legal background.

The plaintiff class, appellees and cross-appellants here, consists of approximately 2200 surface owners of Kansas land burdened by oil and gas leases held or operated by OXY, the appellant and cross-appellee. The leases were executed separately over a century, from 1906 to 2007, but approximately seventy-five percent of the leases were executed in the 1930s and 1940s. The leases contained a "free gas" clause. They did not necessarily contain identical free gas clauses but the clauses all, in substance, purported to grant the lessor access to free gas for domestic use. All of the plaintiffs who have used free gas obtain their gas from a tap connected directly to a wellhead line. In addition, some members of the plaintiff class—including about half of the current users of free gas—have received royalty payments from OXY based on the production of gas on their land.

As gas wells reach the end of their productive life, they often experience decreases in pressure and increases in hydrogen sulfide ("$H_2S$"), a dangerous chemical compound. In August 2007, OXY sent letters warning free gas users

that their gas may become unsafe to use, either because of high hydrogen sulfide content or low pressure at the wellhead. These letters urged the lessors to convert their houses to an alternative energy source.

On August 31, 2007, leaseholders David Schell, Donna Schell, Howard Pickens,[1] and Ron Oliver filed this action on behalf of themselves and others similarly situated, seeking a permanent injunction, a declaratory judgment, and actual damages based on alleged breaches of mineral leases entered into with OXY for failure to supply free usable gas. The declaratory relief sought was:

> Pursuant to [28] U.S.C. [] § 2201, the plaintiff class is entitled to a declaration of the rights under the Free Gas Covenant: namely that OXY is required to provide useable gas pursuant to the terms of the Free Gas Covenant without interruption by virtue of conduct designed to interrupt, interfere with, or disconnect Class members' residences from the use of free gas.

Aplt. App. at 795 (Am. Compl.). The district court certified a class of "all surface owners of Kansas land burdened by oil and gas leases held or operated by OXY USA, Inc. which contain a free gas clause." *Id.* at 546 (Mem. & Order). Plaintiffs subsequently amended their complaint to eliminate their claim for actual damages. Plaintiffs and OXY then filed cross-motions for summary judgment.

The district court denied OXY's motion for summary judgment and granted the plaintiffs' motion for summary judgment. The district court granted the

---

[1] During the pendency of this case in the district court, Howard Pickens died. He has since been removed as a named plaintiff.

4

plaintiffs declaratory relief requiring OXY to provide free useable gas under the contract; however, the district court denied the plaintiffs' motion for a permanent injunction because it found that OXY had continued to provide useable house gas under the contract at all times.

Because the district court found that the free gas clauses were ambiguous and interpreted them according to principles of Kansas law, OXY moved to vacate the judgment to permit it to discover extrinsic evidence of the clauses' meaning. The district court agreed and vacated its judgment. However, after extending the time for discovery, the district court quashed OXY's only deposition request and found that OXY was unable to produce any relevant evidence of the parties' intent. The court further found that it was unlikely any relevant evidence existed. The district court subsequently granted plaintiffs' resubmitted motion for summary judgment.[2] It also denied plaintiffs' motion for attorneys' fees, expenses, and incentive awards. OXY filed this appeal, and the plaintiffs cross-appealed.

After the appeal and cross-appeal were filed, but before the parties' briefs were due, OXY sold all of its interests in the Kansas leases to Merit Hugoton, L.P. ("Merit"). The plaintiff class filed a motion to dismiss the appeal as moot

---

[2]     The district court additionally ruled on the remaining motions submitted by the parties. It denied OXY's motion to decertify the class, affirming its earlier findings that the demands of Rule 23 of the Federal Rules of Civil Procedure were met.

5

based on this sale. We permitted the appeal to proceed to briefing and oral argument. One week after oral argument, Merit filed a motion to intervene as an appellant and cross-appellee. After considering the parties' responses, we denied the motion.

## II

## A

We conclude that this appeal is moot. OXY has sold all of its interests in the leases; therefore, its conduct cannot be affected by a declaratory judgment concerning these same oil and gas leases. Accordingly, we grant the motion of the plaintiff class to dismiss this appeal.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)); *accord Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015). If a case is moot, we have no subject-matter jurisdiction. *See, e.g.*, *Unified Sch. Dist. No. 259 v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1146–47 (10th Cir. 2007).

More specifically, "[c]onstitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." *Id.* at 1147 (quoting *Seneca-Cayuga Tribe of Okla. v. Nat'l*

6

*Indian Gaming Comm'n*, 327 F.3d 1019, 1028 (10th Cir. 2003)). "Th[e] case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see Ind*, 801 F.3d at 1213 ("Because mootness is an issue of subject matter jurisdiction, it can be raised at any stage of the proceedings."). Thus, "[e]ven where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (quoting *Transwestern Pipeline Co. v. Fed. Energy Regulatory Comm'n*, 897 F.2d 570, 575 (D.C. Cir. 1990)). We review de novo the question of whether a case is moot. *See, e.g.*, *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006).

"Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit"—*viz.*, an actual case or controversy between the parties must exist. *Rio Grande Silvery Minnow*, 601 F.3d at 1109–10. In the declaratory-judgment context, the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties. *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute

7

*which affects the behavior of the defendant towards the plaintiff*."); *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) ("When we apply the mootness doctrine in the declaratory judgment context, '[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of *the defendant toward the plaintiff*.'" (alteration in original) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1109–10)). "The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005)).

In this case, it is not possible to afford relief between the parties that will influence the defendant's behavior toward the plaintiff class. Though OXY operated the gas wells at issue in this litigation, it no longer has any purported obligation to provide free gas under the contracts. Thus, the declaratory judgment at issue in this litigation—"that OXY is required to provide useable gas pursuant to the terms of the Free Gas Covenant without interruption," Aplt. App. at 795—cannot affect OXY's behavior because it is no longer bound by the leases and no longer operates the wells in question. OXY is completely unaffected by our interpretation of contractual provisions (i.e., the free gas clauses) in contracts that no longer bind OXY. Because OXY is no longer bound by these contracts,

our interpretation of the provisions will have no effect on OXY's behavior in the real world.

OXY's only argument against mootness is that it retains an interest in the litigation due to the potential preclusive effects of the declaratory judgment. OXY claims that the leaseholders could sue OXY over its prior conduct during the time when it was operating the wells. It claims that it has an interest in the declaratory judgment because a finding that OXY had a duty to make the gas useable could have an adverse preclusive effect in damages suits over the provision of free gas.[3] We deem that concern—*viz.*, the effects of this judgment in hypothetical unfiled future litigation—to be not a legally cognizable interest that will defeat mootness.

---

[3] OXY conceded that "there may be only a small risk that a surface owner might file a lawsuit against OXY," Aplt. Resp. & Reply Br. at 37, but even that may overstate the risk. The district court specifically denied injunctive relief because it found that OXY had provided free useable gas at all times during the litigation. Aplt. App. at 1331 (Mem. & Order) ("Plaintiffs admit defendant has not presently terminated their use of free useable house gas but has only indicated it might to [sic] do so."). Moreover, it found that OXY's "argument about a spate of damages actions is misplaced because at the present time [OXY] has not discontinued the plaintiffs' supply of free, useable gas, thus, *plaintiffs have no damages*." *Id.* at 1327 (emphasis added); *see also* Aplt. Opening Br. at 5 ("OXY has not interrupted or directly interfered with Plaintiffs' use of the free gas."); Aplee. Principal & Resp. Br. at 5 ("For many years, as long as OXY has produced gas under the leases, OXY provided the surface owners free gas for use in their homes."). OXY could only be sued for damages for its past behavior, because it no longer operates the wells in question. But its past behavior is very unlikely to give rise to a lawsuit for damages. In other words, because the district court found, and the parties agree, that OXY never failed to deliver free useable gas, the prospect of a damages claim appears remote at best.

9

Seeking to litigate this ostensible controversy now over unfiled, potential future damages claims is "the very sort of speculative, 'hypothetical' factual scenario that would render such a [declaratory] judgment a prohibited advisory opinion." *Jordan*, 654 F.3d at 1026. Concerns over the preclusive effect of an adverse judgment or other matters relating to a hypothetical unfiled suit are not cognizable reasons for continuing litigation that is otherwise moot. *See United States v. Juvenile Male*, --- U.S. ----, 131 S. Ct. 2860, 2864 (2011) (per curiam) ("True, a favorable decision in this case might serve as a useful precedent for respondent in a hypothetical lawsuit . . . . But this possible, indirect benefit in a future lawsuit cannot save *this* case from mootness."); *see also In re Burrell*, 415 F.3d 994, 999 (9th Cir. 2005) ("[The appellant] may not invoke as an exception to the mootness doctrine the specter of continuing legal harm from res judicata or collateral estoppel arising from his mooted claims when such harm is merely hypothetical and speculative."); *Commodity Futures Trading Comm'n v. Bd. of Trade of Chi.*, 701 F.2d 653, 656 (7th Cir. 1983) ("[O]ne can never be certain that findings made in a decision concluding one lawsuit will not some day . . . control the outcome of another suit. But if that were enough to avoid mootness, no case would ever be moot."). We are specifically prohibited from "advising what the law would be upon a hypothetical state of facts." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)); *see also Front Range Equine Rescue v.*

10

*Vilsack*, 782 F.3d 565, 569 (10th Cir. 2015) ("[W]e are persuaded the contingent possibility that Responsible Transportation might apply for a new grant of equine inspection does not give rise to a current case or controversy, regardless of whether the former grant could have some future influence on the agency's consideration of a hypothetical new request for equine inspection.").  As such, OXY's claimed interest in the adverse preclusive effects of this judgment in hypothetical future suits cannot save this appeal from mootness.

At bottom, the fundamental point is that the declaratory judgment under review in this action has no real-world impact on OXY's conduct; consequently, our decision would not "affect[] the behavior of *the defendant toward the plaintiff*."  *Jordan*, 654 F.3d at 1025 (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1110); *see also Rio Grande Silvery Minnow*, 601 F.3d at 1110 ("The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world."  (quoting *Wyoming*, 414 F.3d at 1212)). It is pellucid that OXY's behavior cannot be altered by a ruling interpreting the meaning of clauses in contracts that no longer bind OXY—that is, contracts to which it is no longer a party.  Even if OXY had breached the contracts in the past, our ruling today on the meaning of the free gas clauses cannot change its present behavior (because it no longer operates the wells) and cannot change its past behavior.  Accordingly, the declaratory judgment action is moot, and we have no

11

jurisdiction to enter a ruling.[4]

**B**

Having determined that the case is moot, we now conclude after study of the relevant authorities that it is appropriate to dismiss this appeal without vacating the district court's judgment regarding the plaintiff class's declaratory-judgment action. The question of whether to vacate a judgment after a finding of mootness "is an equitable question" that must be determined "on the basis of the particular circumstances." *Rio Grande Silvery Minnow*, 601 F.3d at 1129 (citations omitted); *see also U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) ("From the beginning we have disposed of moot cases in the manner '"most consonant to justice" . . . in view of the nature and character of the conditions which have caused the case to become moot.'" (quoting *United States*

---

[4] We have no basis in the record to support the view that Merit's late-blooming request to intervene would have changed this conclusion. The parties have declined to enter into the record any documents related to the sale of the oil and gas leases, so we have no knowledge of how a judgment against OXY might or might not bind Merit. Merit claimed in its motion to intervene that it is the successor in interest to OXY, but nothing in the record supports that claim. Notably, neither Merit nor OXY petitioned for Merit to be *substituted* for OXY, which would have guaranteed that our ruling was binding on Merit, but only for Merit to intervene, which says nothing about the effects on Merit of a declaratory judgment against OXY. The judgment presented for our review is a declaratory judgment against OXY. In the absence of any evidence in the record that a judgment against OXY would bind Merit, we cannot conclude that the judgment will have any effect whatsoever on Merit's behavior toward the plaintiff class. Given the absence of record evidence on the question, we cannot conclude that Merit's intervention in this litigation would have changed the mootness inquiry.

12

*v. Hamburg–Amerikanische Packetfahrt–Actien Gesellschaft*, 239 U.S. 466, 478 (1916))). We conclude that OXY's intentional conduct caused this case to be moot—and viewing this fact in the context of broader balancing of the equities—we determine that the equitable resolution of the question is to leave in place the district court's judgment regarding the declaratory-judgment action.

**1**

"In general, '[w]hen a case becomes moot on appeal, the ordinary course is to vacate the judgment below and remand with directions to dismiss.'" *Rio Grande Silvery Minnow*, 601 F.3d at 1129 (alteration in original) (quoting *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1248 (10th Cir. 2009)); *see also Wyoming*, 414 F.3d at 1213 ("When a case becomes moot pending appeal, the general practice is to vacate the judgment below and remand with directions to dismiss."). Vacatur must be ordered when review of a judgment is "'prevented through happenstance'—that is to say, where a controversy presented for review has 'become moot due to circumstances unattributable to any of the parties.'" *Bancorp*, 513 U.S. at 23 (quoting *Karcher v. May*, 484 U.S. 72, 82, 83 (1987)). We have justified this course by stating that "[t]his is because '[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.'" *Wyoming*, 414 F.3d at 1213 (second alteration in original) (quoting *Bancorp*, 513 U.S. at 25).

However, when mootness results from a voluntary act of one of the parties, we generally act to prevent a party from taking advantage of mootness that the party caused. In particular, as relevant here, when a party—who has lost before the district court—causes mootness and then seeks vacatur, we generally refuse to vacate the district court's opinion. *See Rio Grande Silvery Minnow*, 601 F.3d at 1129 ("On the other hand, if the party seeking vacatur has caused mootness, generally we do not order vacatur."); *Amoco Oil Co. v. U.S. Envtl. Prot. Agency*, 231 F.3d 694, 699 (10th Cir. 2000) ("[G]ranting vacatur to a party who both causes mootness and pursues dismissal based on mootness serves only the interests of that party."); *see also Burrell*, 415 F.3d at 999 ("[E]quity counsels against vacatur[] 'when the appellant has by his own act caused the dismissal of the appeal.'" (quoting *Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982))); *Nat'l Football League Players Ass'n v. Pro-Football, Inc.*, 79 F.3d 1215, 1216–17 (D.C. Cir. 1996) ("As vacatur is an equitable doctrine, we are not to apply it where 'the party seeking relief from the judgment below caused the mootness by voluntary action.'" (quoting *Bancorp*, 513 U.S. at 24)).[5]

_____

[5]    We note that in the converse situation, applying this same equitable principle, "vacatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court," in order to prevent that party from making its win unreviewable. *Bancorp*, 513 U.S. at 23; *cf. Arizonans for Official English v. Ariz.*, 520 U.S. 43, 71–74 (1997) (vacating a district court's

(continued...)

14

Equitable principles keep us from applying this standard in a rigid fashion. Several examples define the operation of this rule. In *Bancorp*, the Supreme Court stated that "[t]he *principal condition* to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Bancorp*, 513 U.S. at 24 (emphasis added). Although *Bancorp* dealt specifically with mootness by reason of settlement, the Supreme Court and our court have recognized that *Bancorp*'s principal condition—that is, whether the party seeking relief from the judgment below caused mootness by voluntary action—extends beyond the settlement context. *See, e.g., Alvarez v. Smith*, 558 U.S. 87, 94–95 (2009) (recognizing the operation of *Bancorp*'s principal condition outside of the settlement context); *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 76 F.3d 1142 (10th Cir. 1996) (relying on *Bancorp* to refuse to vacate a district court's judgment when an appellant had caused the case to become moot through voluntary actions other than settlement).

In *19 Solid Waste Department Mechanics*, plaintiff mechanics challenged the city's drug testing policy, and the district court entered judgment for the plaintiffs. 76 F.3d at 1143. While the city's appeal was pending, the city

---

[5](...continued)
judgment won by a plaintiff who then mooted the case while appeal was pending by resigning her public-sector job but who did not request that the court dismiss the case for mootness). The unifying principle is that generally, a party cannot preserve a win—or wipe away a loss—when its voluntary actions cause an appeal to become moot.

withdrew the proposed policy. *Id.* at 1144. The city initially pursued its appeal and did not request dismissal for mootness, but after it was revealed at oral argument that the policy had been withdrawn, the city submitted a motion to dismiss the claim as moot and vacate the district court's judgment on that issue. *Id.* Although we granted the dismissal, we refused to vacate the district court's judgment. *Id.* We applied *Bancorp*'s statement that "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* (alteration in original) (quoting *Bancorp*, 513 U.S. at 24). We observed that there is a "presumption . . . in favor of retaining the judgment," unless the public interest would be served by vacatur. *Id.* We noted our particular concern in that case that the city had both caused the mootness and urged dismissal on mootness grounds. *Id.* at 1145. For that reason, we refused to grant vacatur, because vacatur would condone "[t]his one-sided use of the mootness doctrine [that] does not appear to serve any interest other than the City's own." *Id.*

Similarly, in *Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004), we declined to vacate portions of a judgment for injunctive relief when they became moot on appeal because of the voluntary compliance by the cross-appellant.[6] *Id.* at 1291–92. In that case, disabled transit passengers sued over a "driver-

---

[6] Other claims became moot because of the death of an appellant and cross-appellee. *Tandy*, 380 F.3d at 1290.

16

discretion policy" that permitted bus drivers "discretion to refuse to deploy lifts for disabled persons who attempted to board an accessible bus on an inaccessible route." *Id.* at 1283. The cross-appellant city, which lost on the issue in the district court, mooted the issue when it equipped all routes with lift-accessible busses and instructed its drivers to deploy lifts at all bus stops. *Id.* at 1291. We concluded that "it is far from clear that vacatur . . . would be the appropriate response to a finding of mootness on appeal brought about by the voluntary conduct of the party that lost in the District Court." *Id.* at 1292 (omission in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 194 n.6 (2000)); *see also In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1198 (10th Cir. 1999) ("[W]e decline to grant vacatur of the decisions underpinning this appeal as well. By retrieving the three planes as to which repossession rights were at issue in this action, Boullioun has voluntarily mooted this appeal.").

In contrast, in two cases, *Wyoming* and *Rio Grande Silvery Minnow*, we vacated the judgment of the district court when an entity that was not a party to the litigation was more responsible for the mootness than any party. In *Wyoming*, the State of Wyoming brought suit against the U.S. Forest Service, which was joined by defendant-intervenor environmental groups, in which the State challenged the Service's adoption of a rule regarding road construction, and the district court entered a judgment against the Forest Service. *See Wyoming*, 414

17

F.3d at 1210–11.  We held that the case was mooted while the intervenor

environmental groups' appeal was pending because the Forest Service had

replaced the rule at issue with a new rule.  *Id.* at 1211–12.  Although we noted

that our usual course is not to vacate the judgment of the district court when the

nonprevailing party causes mootness, we found equitable reasons for vacatur.  *Id.*

at 1213.  First, while the Forest Service had mooted the case, it was only the

environmental groups, and not the Forest Service, that had appealed the adverse

judgment; therefore, no party in the appellate case had mooted the case.  *Id.*

Thus, it was clear that no party to the appellate litigation was "attempting to

manipulate the courts to obtain the relief it was not able to win in the judicial

system."  *Id.*  We concluded that the case was "more akin to one in which a

controversy is mooted through 'circumstances unattributable to any of the

parties.'"  *Id.* (quoting *Bancorp*, 513 U.S. at 23).[7]

---

[7]  The circumstances of *Wyoming* are roughly analogous to those found in a recent case from our circuit, *Front Range Equine Rescue*; not surprisingly, we reached a consistent result there.  In *Front Range*, we described the basic procedural history as follows: "This appeal involves environmental challenges to a federal agency's decisions to grant inspection services for the slaughter and processing of horses and other equines at three slaughterhouses.  In the proceedings below, the district court affirmed the agency's grants of inspection." 782 F.3d at 567.  We determined that "recent developments have significantly changed the status of th[e] litigation," and ultimately concluded that those developments had rendered the litigation moot.  *Id.* at 568.  Though the events that had caused the appeal's mootness were voluntary actions (rather than happenstance), they were not within the control of the appellants who advocated for vacatur, nor were they actions of the prevailing federal agency.  *See id.* at 571.

(continued...)

18

Similar concerns animated the court in *Rio Grande Silvery Minnow*. In that case, as relevant here, actions by Congress and federal agencies caused ongoing litigation to become moot. *See Rio Grande Silvery Minnow*, 601 F.3d at 1108, 1115. Plaintiff environmental groups asked the district court to dismiss the case, but asked it not to vacate prior orders in which the groups had prevailed. *Id.* at 1108–09. The defendant federal agencies urged vacatur. *Id.* at 1109. On the vacatur question, we concluded that the federal agencies, which had lost in the district court, were not attempting to "'manipulate[] the judicial process' by depriving the district court of jurisdiction," *id.* at 1130 (alteration in original) (quoting *McClendon v. City of Albuquerque*, 100 F.3d 863, 868 (10th Cir. 1996)); therefore, we concluded that their voluntary actions should not weigh against them in seeking vacatur, *id.* at 1130–31. In addition, we concluded that "the district court essentially imputed congressional action to the appellants." *Id.* at 1131. Because Congress was not a party in the case, we determined that the mootness was primarily attributable to the actions of a third party, and thus the equities favored vacatur. *Id.* at 1132.

---

[7](...continued)
Instead, mootness was caused by "unilateral decisions made by the slaughterhouse Intervenors-Appellees and by various [non-party] government officials, not by any action of Appellants." *Id.* Accordingly, under these circumstances, we concluded that "vacatur of the district court's judgment is appropriate," *id.*, seemingly doing so with confidence that the appellants were not "attempting to manipulate the courts to obtain the relief [they were] not able to win in the judicial system," *Wyoming*, 414 F.3d at 1213.

Furthermore, the Supreme Court has recognized that, even where a party has voluntarily mooted the appeal, it is possible for compelling equitable circumstances to militate strongly in favor of vacatur. In *Alvarez,* the Supreme Court ordered vacatur even though the defendant-appellant State had mooted the appeal; the State had done so by voluntarily returning cars and cash that it had seized from the plaintiffs-appellees, such that the underlying property dispute was resolved. 558 U.S. at 96–97. Although the State had voluntarily returned the seized property, it had done so in the ordinary course of state court proceedings that had no procedural link to the federal case and involved only issues of state substantive law. *See id.* Specifically, the State voluntarily dismissed the state court proceedings and returned the property between eleven and forty months after the seizures; this was "a long enough time for the State to have investigated the matters and to have determined . . . for evidentiary reasons that it did not wish to claim" the property. *Id.* at 96. The Court observed that "[t]he disparate dates at which plaintiffs' forfeiture proceedings terminated" over the forty-month period "indicate[d] that the State's Attorney did not coordinate the resolution of plaintiffs' state-court cases, either with each other or with plaintiffs' federal civil rights case." *Id.* It accordingly concluded that "the presence of th[e] federal case played no significant role in the termination of the separate state-court proceedings." *Id.* at 96–97. And, because these circumstances—which the Court was called upon to weigh in the equitable balancing—"more closely resemble[d]

20

mootness through 'happenstance' than through 'settlement,'" *id.* at 94, it

concluded that "there [wa]s not present here the kind of 'voluntary forfeit[ure]' of

a legal remedy [i.e., appellate review of an adverse judgment] that led the Court

in *Bancorp* to find that considerations of 'fairness' and 'equity' tilted against

vacatur," *id.* at 97.  Thus, the *Alvarez* Court held that vacatur was appropriate.

We have previously taken a similar stance in recognizing that certain

compelling equitable circumstances militated in favor of vacatur, even where a

party was responsible for mooting the appeal.  Specifically, *McClendon* provided

a rare instance in which we concluded that the "defendants [we]re, in effect,

responsible for mooting this appeal," but we still agreed to vacate the district

court's judgment against the defendants.  *McClendon*, 100 F.3d at 868.  The

circumstances in *McClendon* were unusual: defendants were city and county

prison officials who lost in the district court and then, during the pendency of the

appeal, voluntarily complied with the district court's mandate to reduce prison

overcrowding.  *Id.* at 866–67.  We based our decision to vacate on the fact that

this was "clearly not a case in which a defendant has manipulated the judicial

process by deliberately aborting appellate review to avoid a decision on the

issues."  *Id.* at 868.  Rather, because defendants had mooted the appeal by

complying with the district court's order, they should not be burdened by leaving

the adverse opinion in place.  *Id.*  We reached this conclusion because we

determined that the defendants' actions "constitute[d] responsible governmental

21

conduct to be commended" and we did not want to discourage their voluntary act to reduce prison overcrowding. *Id.*

In sum, our usual disposition is not to grant vacatur when the act mooting the appeal was caused by the non-prevailing party, but we will grant vacatur when the act causing mootness was more attributable to some person or entity outside of the litigation, or where other compelling equitable reasons demonstrate that vacatur is appropriate.

**2**

Though resisting our determination of mootness, OXY has argued alternatively that, if we conclude that the appeal is moot, we should vacate the district court's judgment (and accompanying memorandum order). After weighing the equities of this case, however, we determine that vacating the district court's judgment would not be appropriate. To begin, the prior decisions of our court emphasize that "our resolution of the mootness issue necessarily impacts our examination of 'where the equities . . . lie.'" *Rio Grande Silvery Minnow*, 601 F.3d at 1130 (omission in original) (quoting *Rio Grande Silvery Minnow v. Keys*, 355 F.3d 1215, 1221 (10th Cir. 2004)). Indeed, we have repeatedly warned that "the appropriateness of vacatur must be determined 'on the basis of the particular circumstances.'" *Id.* at 1129 (quoting *McClendon*, 100 F.3d at 868); *see also Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 353 (D.C. Cir. 1997) (stating that the court's prior decisions on mootness

22

reflect the weighing of particular circumstances in the public interest).

There is no ground for dispute that OXY's voluntary action caused the mootness in this case. OXY caused the controversy over the free gas clauses to become moot when it sold the oil and gas rights in question to Merit. And unlike *Rio Grand Silvery Minnow* or *Wyoming*, there is no other entity absent from this appeal that was more responsible for mooting the controversy. Thus, our precedent counsels against vacating the district court's judgment. To act otherwise would permit OXY to benefit from its voluntary act by wiping away a loss. *See Mfrs. Hanover Tr. Co. v. Yanakas*, 11 F.3d 381, 383 (2d Cir. 1993) ("If we were to vacate where the party that lost in the district court has taken action to moot the controversy, the result would be to allow that party to eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won.").

Furthermore, we have repeatedly rejected the argument that we should vacate the judgment of the district court because leaving it in place might adversely affect a future action against an appellant that caused mootness. *See W. Pac. Airlines*, 181 F.3d at 1198 (rejecting the claimed equity "that vacatur would free [the appellant causing mootness] from the preclusive effect of the lower court decisions"); *19 Solid Waste Dep't Mechs.*, 76 F.3d at 1145 ("[T]he assertion that some unquantified number of other employees disciplined under the withdrawn policy may use the district court judgment offensively against the City is far too

23

speculative to support a departure from the normal practice of letting a judgment lie against the party that has caused mootness."); *see also Ford v. Wilder*, 469 F.3d 500, 506 (6th Cir. 2006) ("The defendants' only argument in favor of vacatur is the 'possibility that the judgment of the court below could influence the litigation of this issue in the future.'  However, this argument could apply to every case that becomes moot pending appeal, and the defendants have not shown that the public interest would be furthered by vacatur."  (citation omitted)).

Moreover, our view of the equities in this case is reinforced by OXY's apparent litigation strategy before our court, which is objectively consistent with an effort to secure an impermissible advisory opinion regarding the meaning of the frequently-used free gas clauses at issue here.  In this regard, OXY did not take the fundamental steps necessary to enable our review of this case to be binding on anyone.  Despite repeated questions at oral argument, OXY never voluntarily offered for inclusion in the record the sales contract, or a part thereof, to show whether our interpretation of the free gas clauses would be binding on Merit.  *See generally Clark v. K–Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992) (en banc) ("[B]ecause mootness is a jurisdictional issue, we may receive facts relevant to that issue; otherwise there would be no way to find out if an appeal has become moot."); *Cedar Coal Co. v. United Mine Workers of Am.*, 560 F.2d 1153, 1166 (4th Cir. 1977) (permitting a party to file affidavits relevant to the

24

question of whether the cases were moot).[8]  Nor did OXY file a motion to substitute parties.  *See generally* Fed. R. App. P. 43 (providing for substitution of parties after notice of appeal is filed); *United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974) ("Since a substituted party steps into the same position as the original party there is a continuance of the original action and a separate proceeding against the substituted party is not necessary.").

OXY protests that it did not "enter[] into this **$1.4 billion** sale of regional assets for the purpose of mooting one appeal," Aplt. Resp. & Reply Br. at 38, and that it never asked us to dismiss the case as moot.  However, we have no adequate means on this record to reach a firm conclusion regarding OXY's subjective purpose.  In any event, under a holistic vacatur analysis, the fact that OXY's purpose was unrelated to mooting this appeal would be only one factor—albeit a significant one—in the calculus.  *See Alvarez*, 558 U.S. at 94, 96–97 (noting "[t]he statute that enables us to vacate a lower court judgment when a case becomes moot is flexible," yet ordering vacatur in significant part because the Court had come to "believe that the presence of this federal case played no significant role in the termination of the separate state-court proceedings"); *see also Rio Grande Silvery Minnow*, 601 F.3d at 1129; *McClendon*, 100 F.3d at 868.

---

[8]      We note that the motion to dismiss this appeal on mootness grounds was pending before this court, and garnered a response from OXY, before OXY's principal brief was due, giving OXY ample opportunity to take steps necessary to shore up jurisdiction in this case if it desired or was able to do so.

25

Similarly, OXY's resistance to a finding of mootness is admittedly a germane factor in the vacatur anaylsis. *See Alvarez*, 558 U.S. at 97 (stating that the fact that both parties argued against mootness at oral argument "further suggests that a desire to avoid review in this case played no role at all in producing the state case terminations"); *cf. 19 Solid Waste Dep't Mechs.*, 76 F.3d at 1145 (concluding that the appellant "fail[s] to demonstrate 'equitable entitlement to the extraordinary remedy of vacatur'" when the appellant "both caused mootness and sought dismissal on the basis of mootness" (quoting *Bancorp*, 513 U.S. at 26)).

However, even if we accept that mooting this appeal was not OXY's purpose for the sale, and also factor into the equitable calculus OXY's resistance to a mootness finding, it remains undeniable that OXY's voluntary action mooted this appeal. And we cannot conclude that, in *every* instance where such circumstances are present, we are obliged to "allow [a] party to eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won." *Mfrs. Hanover Tr. Co.*, 11 F.3d at 383.

Significantly, OXY has not presented a compelling equitable reason here for vacatur. Notably, in this respect, OXY's circumstances are not akin to those found in *Alvarez* and *McClendon*. In *Alvarez*, the State voluntarily caused the action to become moot, but for reasons that are commendable. There, the State voluntarily returned the seized items after it "investigated the matters" eleven to forty months after the seizures and made the kind of evidence-based, voluntary

26

determinations to offer redress that the Supreme Court would commend. *Alvarez*, 558 U.S. at 96. In similar circumstances, in *McClendon*, the city prison officials voluntarily caused the action to become moot, but they did so by reducing prison overcrowding, which we described as "responsible governmental conduct to be commended." *McClendon*, 100 F.3d at 868. Now, based upon what we know here, OXY's sale was certainly not anything to condemn, but we have no reason to necessarily commend it either; we are entirely phlegmatic regarding the sale. This case therefore does not present the kind of commendable action that the Supreme Court addressed in *Alvarez* and that we faced in *McClendon*—the kind of action that would furnish compelling equitable reasons for vacatur. Furthermore, we are unaware of any other considerations on this record that would engender the same or a similar magnitude of equitable effect.

For these foregoing reasons, we conclude that the equities do not favor vacating the district court's judgment in favor of the plaintiff class. Accordingly, we dismiss this appeal without disturbing that judgment.[9]

## C

The only remaining matter is the plaintiffs' cross-appeal challenging the

---

[9] As we have said in prior cases reaching such a disposition, "[w]hile we decline to vacate the decisions below, our opinion should not be read as an affirmance of the underlying decisions on the merits." *W. Pac. Airlines*, 181 F.3d at 1198. Because we lack jurisdiction over the matter due to its mootness, we are in no position to express an opinion on the merits of the parties' arguments regarding the free gas clause.

27

district court's denial of their motion for attorneys' fees, expenses, and an incentive award. We still have jurisdiction to address this matter, despite the mootness of the merits appeal. We agree with the reasoning of the district court: the plaintiff class has not shown a legally sound basis for an award of attorneys' fees and other related relief.[10] Accordingly, we affirm this portion of the district court's judgment.

## 1

A claim for attorneys' fees may remain viable even after the underlying cause of action becomes moot. *See Dahlem ex rel. Dahlem v. Bd. of Educ.*, 901 F.2d 1508, 1511 (10th Cir. 1990) ("While a claim of entitlement to attorney's fees does not preserve a moot cause of action, the expiration of the underlying cause of action does not moot a controversy over attorney's fees already incurred."

---

[10] In litigating plaintiffs' motion before the district court, the parties did not suggest that plaintiffs' request for attorneys' fees should be analyzed discreetly from their request for other litigation expenses and an incentive award (allegedly based on the superior performance of plaintiffs' counsel); more specifically, the parties' briefing reflected an understanding that, if plaintiffs could not prevail on their request for attorneys' fees, they also could not win their other sought-after relief. *See, e.g.*, Aplt. App. at 2203 (Mem. & Order) ("The parties agree that an award of nontaxable expenses depends on whether the court awards attorneys' fees."). And on appeal, the parties' arguments reflect the same understanding. For reasons explicated *infra*, the parties' perception of the interrelationship between attorneys' fees and the other monetary relief that plaintiffs seek has a solid grounding in the law. Given this interrelationship, we have no occasion here to analyze discreetly plaintiffs' entitlement to the three components of relief sought in their motion; instead, our analytical focus is on the propriety of the district court's ruling regarding attorneys' fees.

28

(citation omitted)); *see also Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1183 (10th Cir. 2000) (interpreting *Dahlem* to mean that "a plaintiff may still recover (and a defendant may still contest) fees even when the merits have been rendered moot"). In *Dahlem*, for example, plaintiff Scott Dahlem, a high school student, wanted to participate in interscholastic gymnastics, but his public high school only had a girls' gymnastics team and prohibited boys from participating. *Id.* at 1510. Mr. Dahlem sued and was granted a preliminary injunction in the district court, and the school appealed. *Id.* While its appeal was pending, the gymnastics season ended; because Mr. Dahlem was a high school senior at that time, we deemed the appeal—addressing whether Mr. Dahlem had a right to participate on the gymnastics team—moot and dismissed it. *Id.* Mr. Dahlem then filed a motion for attorneys' fees in the district court, which the court denied. *Id.* In the appeal from the district court's ruling, we held that the dismissal of Mr. Dahlem's preliminary injunction action as moot did not moot the claim for attorneys' fees. *Id.* Accordingly, we rejected the school board's motion to dismiss the appeal for lack of jurisdiction. *Id.* at 1510–11. Thus, a controversy over attorneys' fees does not become moot simply because the underlying dispute becomes moot on appeal.[11]

---

[11] We have also stated that a plaintiff may not use a dispute over attorneys' fees to revive an otherwise moot controversy on the merits. *See Fleming v. Gutierrez*, 785 F.3d 442, 448 (10th Cir. 2015) ("The possibility that

(continued...)

29

Because there is a live controversy between the parties, we may afford

relief by deciding the issue; in other words, the issue is not moot.  At bottom, the

outcome of this appeal turns on which party should bear the financial burdens of

the plaintiffs' representation in the district court, including a sum of $2 million in

attorneys' fees.  *See* Aplt. App. at 2197 (Mem. & Order).  Our resolution of the

cross-appeal will assign these burdens between the two parties present in this

litigation.  As such, we address a live controversy with actual stakes for the

parties in this litigation.

## 2

Nevertheless, the plaintiffs cannot prevail on this issue.  "Under the

American Rule, absent a statute or enforceable contract, a prevailing litigant is

---

[11](...continued)
the preliminary injunction will form the basis for a grant of attorney's fees does
not transform this appeal into a live controversy."); *see also Lewis*, 494 U.S. at
480 ("This interest in attorney's fees is, of course, insufficient to create an Article
III case or controversy where none exists on the merits of the underlying claim."
(citation omitted)); *Diamond v. Charles*, 476 U.S. 54, 70–71 (1986) (holding that
a party does not have an interest in an underlying claim just because prevailing
would entitle the party to attorneys' fees); *Davidson*, 236 F.3d at 1183 (stating
that *Dahlem* does not stand for the proposition that "an otherwise moot issue is
revived whenever a prevailing party requests or might request fees").  But that is
not the case here.  The cross-appeal solely seeks our ruling on the motion for
attorneys' fees, not on any underlying action that might affect the ability to
collect attorneys' fees.  Our cases have confirmed that a claim for attorneys' fees
remains viable even after the underlying action becomes moot.  *See Fleming*, 785
F.3d at 448; *Davidson*, 236 F.3d at 1183.  In sum, these opinions hold that a
controversy over attorneys' fees remains viable on its own, but does not give life
to any other mooted dispute.

ordinarily not entitled to collect reasonable attorney fees from the loser." *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1480, 1481 (10th Cir. 1993); *see generally Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967) ("In support of the American rule, it has been argued that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel.  Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration."  (citations omitted)).

This rule applies more generally to ordinarily preclude recovery from one's adversary of the multifaceted monetary burdens of civil litigation—including, for example, the litigation expenses and incentive award at issue here.  *See, e.g*, *United States v. McCall*, 235 F.3d 1211, 1216 (10th Cir. 2000) (noting the applicability of the American Rule to "respective financial burdens of litigating civil claims"); *see also Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2213 (2011) ("Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses.  Indeed, this principle is so firmly entrenched that it is known as the 'American Rule.'"); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) ("The general rule in

31

our legal system is that each party must pay its own attorney's fees and expenses . . . .").  Accordingly, though focused on the propriety *vel non* of the district court's ruling regarding attorneys' fees, our analysis—premised on the American Rule—also fully speaks to the merits of the court's decision regarding the other monetary relief that plaintiffs seek through this cross-appeal.  *See, e.g.*, *Nepera Chem., Inc. v. Sea-Land Serv., Inc.*, 794 F.2d 688, 696 n.56 (D.C. Cir. 1986) ("The reasons underlying the American Rule lead to the conclusion normally that litigation expenses other than attorneys' fees are similarly nonrecoverable.  Since the two seem to go hand-in-hand, what we say in this opinion about attorneys' fees applies generally to other suit expenses as well.").

We have recognized a limited number of equitable exceptions to the American Rule: "the bad faith exception, the common fund exception, the willful disobedience of a court order exception, and the common benefit exception." *Aguinaga*, 993 F.2d at 1482.  But, apart from those exceptions, the prevailing party must identify a statutory or contractual right to attorneys' fees.  *See id.* at 1481–82; *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010) ("'Our basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683 (1983))); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–59 (1975) (listing the

32

four equitable exceptions to the American Rule).

In denying attorneys' fees or incentive awards to class representatives, the district court (apparently sympathetic to the plaintiff class) stated that its decision was "a seemingly absurd conclusion," noting that plaintiffs' attorneys had acted prudently and had conferred a substantial benefit, valued at over $30 million, on the class while "having worked for free" without the benefit of an attorneys' fees award. Aplt. App. at 2202–03 (Mem. & Order). Nevertheless, the court found that none of the exceptions to the American Rule that the plaintiff class advocated for actually applied to this case. *Id.* at 2202. Additionally, the district court found "no independent statutory or contractual basis for attorneys' fees under [28 U.S.C.] § 2202." *Id.* As a result, it denied the requested fees and monetary awards.

On appeal, plaintiffs argue that they qualified for attorneys' fees under the common-benefit exception to the American Rule; in the alternative, they argue for such fees under 28 U.S.C. § 2202. "We review a district court's attorneys' fees award for abuse of discretion. In doing so, we review the district court's application of legal principles de novo, and we review the district court's findings of fact for clear error." *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184 (10th Cir. 2011) (citation omitted). Because we find that neither the common-benefit exception nor § 2202 is applicable here, we uphold the district court's ruling.

**a**

Plaintiffs claim that they are entitled to attorneys' fees under an equitable exception available when the litigation confers a substantial common benefit on the class. *See Aguinaga*, 993 F.2d at 1482 (recognizing the viability of the common-benefit exception). The common-benefit exception applies where "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionally among them.'" *Hall v. Cole*, 412 U.S. 1, 5 (1973) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970)). Plaintiffs assert—and OXY does not dispute—that if they win, plaintiffs will have secured a substantial benefit for the plaintiff class.[12]

However, a common-benefit exception is only permissible where the costs will be spread across the plaintiff class and not shifted as an added penalty to the defendants. *See Mills*, 396 U.S. at 396–97 ("To award attorneys' fees . . . to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has

---

[12]    The fact that relief here is declaratory relief, rather than damages, does not prevent the finding of a substantial benefit. *See, e.g.*, *Mills*, 396 U.S. at 392 (concluding that a common-benefit exception award was not barred by "[t]he fact that this suit has not yet produced, and may never produce, a monetary recovery").

34

benefited from them and that would have had to pay them had it brought the suit."); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 467 (7th Cir. 2006) ("The common benefit exception is inapplicable to this case. The plaintiffs ask this court to shift their fees to the defendants; the common benefit doctrine, however, serves to shift fees and expenses from the plaintiffs individually to the benefitting class as a whole.").

Typically, this exception is employed to deduct attorneys' fees from a common fund, or to assess attorneys' fees from a defendant corporation in a shareholder derivative suit, to ensure that all fund recipients or shareholders contribute to the cost of the litigation from which they benefitted. *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995). Such an award is permissible "where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among [plaintiffs]." *Id.* (quoting *Hall*, 412 U.S. at 5).

In their initial brief, the plaintiffs suggest that the district court would have such jurisdiction here, noting that its "declaratory judgment ensures, for decades into the future, OXY's provision of free, useable gas to all 2,200 Class members with free gas clauses in their leases." Aplee. Principal & Resp. Br. at 45. More specifically, the plaintiffs contend that there will be an ongoing relationship between OXY and class members through which the costs of the attorneys' fees imposed on OXY could be recouped, such that presumably the fees would not

amount to an additional penalty: "OXY and these surface owners have a continuing relationship which enables OXY to spread an award of Class's reasonable attorneys' fees, non-taxable expenses and incentive award among those who benefit from the free gas clause in OXY's leases." *Id.* Though they do not say so, presumably the plaintiffs anticipate that OXY could effect this cost sharing by reducing royalties or increasing the charges on class members to recoup the attorneys' fees award imposed upon it.

However, the salient and determinative problem with this line of argument is that it no longer bears any connection to current reality, given OXY's sale of the leases to Merit. As we have explained, there is no ongoing financial relationship between class members and OXY. In other words, OXY has no status that would permit it to spread the costs of an attorneys' fees award over these members. Indeed, in their reply brief, the plaintiffs all but concede this, writing, "in reality, the [common-benefit] doctrine can no longer apply because OXY sold all of its Kansas leases as of April 30, 2014." Aplee. Reply Br. at 8. In the absence of such an ongoing relationship, an award of the requested attorneys' fees would be nothing more than a penalty on OXY, which is not contemplated by the common-benefit exception. Accordingly, we cannot award the plaintiffs attorneys' fees under this exception.

**b**

The plaintiffs also argue that the district court could have awarded

36

attorneys' fees (and the other relief they requested in their motion) by exercising its discretion under 28 U.S.C. § 2202, which provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." We conclude that the district court did not abuse its discretion in concluding that § 2202 does not authorize an independent grant of attorneys' fees that is not otherwise authorized by statute, contract, or state law.

We have never recognized § 2202 as an independent basis to award attorneys fees—*viz.*, as an additional ground for such fees beyond the four well-recognized exceptions to the American Rule.[13] Moreover, when our sister circuits have considered the question, they have concluded that § 2202 does not give an independent power to award attorneys' fees. *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("[Section] 2202 of the Federal

---

[13] This question appears to have been presented to a panel of our court but we had no occasion to resolve it. Specifically, in *Kornfeld v. Kornfeld*, 341 F. App'x 394 (10th Cir. 2009) (unpublished), the district court had based its fee award on a finding of bad faith, and we remanded the fee award for a more specific finding of whether the bad faith at issue could meet our narrow test. *See Kornfeld*, 341 F. App'x at 400. The district court had also purportedly relied on § 2202 to justify the fee award, but we declined to consider whether that statute could justify the award—beyond the independent finding of bad faith—because the district court relied on bad faith as its primary rationale and any error in considering § 2202 would be harmless if the bad faith finding was correct. *See id.* at 399 ("Whether [the defendants'] argument is valid depends on whether § 2202 constitutes an exception to the American Rule that, absent a contractual or statutory basis, attorney fees may not be included as damages. We need not resolve this question[] . . . ." (citations omitted)).

[Declaratory Judgment Act] 'does not by itself provide statutory authority to award attorney's fees . . . .'" (quoting *Mercantile Nat'l Bank at Dallas v. Bradford Tr. Co.*, 850 F.2d 215, 218 (5th Cir. 1988)); *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 273 (1st Cir. 1990) ("The availability of attorney's fees in diversity cases depends upon state law, and this holds true in declaratory judgment actions." (citation omitted)); *Am. Family Ins. Co. v. Dewald*, 597 F.2d 1148, 1151 (8th Cir. 1979) ("[A]ttorney's fees may be awarded under 28 U.S.C. [§] 2202 where such an award is authorized by applicable state law for comparable actions."). We are disinclined to follow a different path here, especially because the plaintiff class offers us no persuasive reason to do so.

The plaintiffs rely on *Gant v. Grand Lodge of Tex.*, 12 F.3d 998 (10th Cir. 1993), to show that § 2202 permits a court to award attorneys' fees, but that case involved an award of fees that were independently required by the will at issue. In *Gant*, we recognized the authority of the district court to grant attorneys' fees in a motion for further relief for payment under a will that guaranteed the plaintiff "an annual amount sufficient to insure her an adequate living." *Gant*, 12 F.3d at 1000. We concluded that § 2202 permitted the attorneys' fees, in response to a motion for further relief, because the fees constituted "extraordinary expenses" whose coverage was *mandated* by the will's provision that the plaintiff be "insure[d] . . . an adequate living." *Id.* at 1002 (quoting *Gant v. Grand Lodge of Tex.*, No. 86-1415 JP, 1992 WL 589728, at *1 (D.N.M. Jan. 9, 1992)). In other

38

words, we concluded that § 2202 permitted the court to award attorneys' fees in connection with the necessary enforcement of the will at issue.

Accordingly, we determine that the district court did not abuse its discretion in rejecting a claim for attorneys' fees under § 2202. The court correctly stated that "there is no *independent* statutory or contractual basis for attorneys' fees under § 2202." Aplt. App. at 2202 (Mem. & Order) (emphasis added).[14]

### III

We **GRANT** Appellees' motion to dismiss this appeal as moot and accordingly **DISMISS** this appeal. We **AFFIRM** the judgment of the district court on the cross-appeal.

---

[14] The plaintiffs briefly claimed in their reply brief that OXY litigated in bad faith. Because the plaintiffs failed to raise this argument in their opening brief, we do not consider it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

13-3297, 13-3304 – *Schell v. OXY USA, Inc.*

**HARTZ**, Circuit Judge, concurring in part and dissenting in part:

I would grant panel rehearing and vacate the judgment below. I join all the revised opinion except footnote 4 and part II B. Although I do not join the footnote, I agree with our denial of the untimely motion to intervene. I respectfully dissent from part II B.

On reconsideration, I believe two factors argue strongly in favor of vacating the district-court judgment. OXY's voluntary action that mooted the case was obviously not motivated by the pendency of this litigation, and OXY argued against mootness. *See Alvarez v. Smith*, 558 U.S. 87 (2009). I see no equitable reason to blame OXY for depriving the plaintiffs of their victory in district court. After all, we have ruled (by dismissing the case as moot) that OXY has no further stake in this litigation. If plaintiffs, who raised the mootness issue, wanted to preserve their legal victory concerning interpretation of their contracts, they should have been the ones to seek to substitute OXY's successor (now the real party in interest) as the defendant. *See* Fed. R. App. P. 43 (a)(1), (b) (any party can file motion to substitute); *Maier v. Lucent Techs., Inc.*, 120 F.3d 730, 732 n.1 (7th Cir. 1997) (substitution of parties is appropriate "when a party transfers its interest in the company or property involved in the suit.") Then the successor could determine whether it wished to continue with the appeal. Yet when the successor moved to intervene, plaintiffs opposed the motion. If there is any inequitable conduct here, it is the strategy of plaintiffs, who wished to prevent any appeal of the judgment in its favor by arguing mootness but opposing intervention.